**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

IN RE APPLICATION OF
**HAND HELD PRODUCTS, INC.**
FOR AN ORDER TO TAKE DISCOVERY
PURSUANT TO 28 U.S.C. § 1782,

Civil Action No. 1:24-mc-91378

                Applicant.

**HAND HELD PRODUCTS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS
APPLICATION FOR AN ORDER TO TAKE DISCOVERY IN AID OF
FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782**

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ....................................................................................... 1

II.  BACKGROUND ....................................................................................... 4

    A.  The Parties ........................................................................................ 4

    B.  Hand Held's Barcode Scanning Patents .......................................... 4

    C.  Hand Held Asserts Its Barcode Scanning Patents Against Scandit In The Foreign Infringement Proceedings ................................................ 6

        1.  Infringement Proceeding in the Munich District Court I .......... 6

        2.  Infringement Proceeding in the UPC Düsseldorf Local Chamber ............ 6

        3.  Infringement Proceeding in the UPC Munich Local Chamber ................. 6

    D.  Hand Held's Requested Discovery .................................................. 7

III.  ANALYSIS ............................................................................................. 9

    A.  Hand Held's Application Satisfies § 1782's Threshold Requirements ............... 9

        1.  Scandit, Inc. is found within this District .................................. 9

        2.  The discovery requested is "for use" before the Munich District Court I and UPC ............ 9

        3.  Hand Held is an "interested person" under Section 1782 ........ 11

        4.  Hand Held is not seeking privileged material .......................... 12

    B.  All *Intel* Discretionary Factors Weigh In Favor Of Granting Hand Held's Requested Discovery .............................................. 12

        1.  The requested discovery is beyond the jurisdictional reach of the Munich District Court I and the UPC such that the discovery from Scandit, Inc. cannot be obtained absent Section 1782 relief ............. 13

        2.  The Munich District Court I and UPC are receptive to discovery obtained through U.S. judicial assistance ................................. 16

        3.  This Application does not attempt to circumvent foreign proof-gathering restrictions ............................................................. 18

        4.  The requested discovery is commensurate with its relevance to the Foreign Infringement Proceedings and will not unduly burden Scandit, Inc. .......................................................................... 18

IV.  CONCLUSION ....................................................................................... 19

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Akkermansia Co.*,
    No. 22-MC-91577-DJC, 2023 WL 4015992 (D. Mass. May 5, 2023)....................................12

*Apple Inc. v. Samsung Elecs. Co.*,
    No. C 11–1846 LHK (PSG), 2012 WL 1595784 (N.D. Cal. May 4, 2012) ...........................19

*In re Application for an Order Permitting Metallgesellschaft AG to
    take Discovery*, 121 F.3d 77 (2d Cir. 1997)...............................................................................18

*In re Application of Johannes Roessner*,
    No. 21-MC-513 (RA) (OTW), 2021 WL 5042861 (S.D.N.Y. Oct. 29, 2021) .......................13

*In re Ex Parte Application of Volkswagen AG*,
    No. 24-MC-0832 (JS), 2024 WL 1556912 (E.D.N.Y. Apr. 10, 2024).......................10, 15, 17

*In re Betapharm Arzneimittel GmbH*,
    No. 1:23-MC-91600-IT, 2024 WL 421996 (D. Mass. Feb. 5, 2024) ......................................10

*Chevron Corp. v. Sheffitz*,
    754 F. Supp. 2d 254 (D. Mass. 2010) .....................................................................................11

*CPC Pat. Techs. PTY Ltd. v. Apple, Inc.*,
    No. 21-MC-80091-JST, 2023 WL 3579314 (N.D. Cal. Jan. 3, 2023).....................................17

*In re Fagan*,
    No. CV 19-MC-91210-ADB, 2019 WL 2267063 (D. Mass. May 28, 2019).........................12

*In re Gen. Elec. Co.*,
    No. 1:22-CV-91125-IT, 2022 WL 16720425 (D. Mass. Nov. 4, 2022) ........................ *passim*

*Heraeus Kulzer, GmbH v. Biomet, Inc.*,
    633 F.3d 591 (7th Cir. 2011) ....................................................................................14, 15, 16

*Illumina Cambridge Ltd. v. Complete Genomics, Inc.*,
    No. 19-MC-80215-WHO(TSH), 2020 WL 820327 (N.D. Cal. Feb. 19, 2020) ..........10, 15, 17

*Intel, Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004).................................................................................................... *passim*

*Minis v. Thomson*,
    No. MISC. 14-1050-DJC, 2014 WL 1599947 (D. Mass. Apr. 18, 2014)...............................11

*In re Netgear Inc.*,
    No. 23MC794-BLM, 2024 WL 390059 (S.D. Cal. Jan. 31, 2024) .........................................10

*Palantir Techs., Inc. v. Abramowitz*,
    415 F. Supp. 3d 907, 909 (N.D. Cal. 2019) ................................................................10, 14, 17

*In re Porsche Auto. Holding SE*,
    No. CV 19-MC-91129-LTS, 2019 WL 5806913 (D. Mass. Nov. 6, 2019),
    *adopted sub nom.* No. CV 19-MC-91129-LTS, 2020 WL 813710 (D. Mass.
    Feb. 19, 2020), *aff'd*, No. 20-1239, 2021 WL 140638 (1st Cir. Jan. 15, 2021) ...............14, 18

*In re Porsche Automobil Holding SE*,
    985 F.3d 115 (1st Cir. 2021).......................................................................................12, 13, 17

*In re Samsung Elecs. Co, Ltd.*,
    No. 22-MC-80005-VKD, 2022 WL 425579 (N.D. Cal. Feb. 11, 2022)..................................19

*Sandra Holding Ltd. v. Al Saleh*,
    No. 18-MC-91406-PBS, 2019 WL 3072197 (D. Mass. July 15, 2019) ..................................18

*In re Schlich*,
    893 F.3d 40 (1st Cir. 2018)................................................................................. *passim*

*In re Thales Dis Ais Deutschland GmbH*,
    No. 3:21-MC-303-S, 2021 WL 7707268 (N.D. Tex. Nov. 5, 2021)
    .........................................................................................................10, 14, 15, 19

*Weber v. Finker*,
    554 F.3d 1379 (11th Cir. 2009) .............................................................................11

*ZF Auto. US, Inc. v. Luxshare, Ltd.*,
    596 U.S. 619 (2022)..................................................................................9, 10, 11

**Statutes**

28 U.S.C. § 1782...............................................................................................3, 9

28 U.S.C. § 1782(a) ........................................................................................1, 3, 11

**Other Authorities**

UPCA Ch. I Art. I, Art. IV...............................................................................17

Applicant Hand Held Products, Inc. ("Hand Held" or "Applicant"), by and through its counsel, hereby applies to the Court for an Order under 28 U.S.C. § 1782(a) granting it leave to serve a subpoena on Scandit, Inc. ("Scandit, Inc." or "Respondent") for use in two pending proceedings in the Unified Patent Court ("UPC Actions") and one pending proceeding in the Munich District Court I, Patent Litigation Chamber ("German Action") (collectively, the "Foreign Infringement Proceedings"). Hand Held's request for discovery is based upon its Application, this Memorandum of Law, the Declaration of Tobias Wuttke, and the exhibits attached thereto. A proposed discovery Order (attached as Exhibit A) together with the proposed Subpoena (attached as Exhibit B) are also submitted concurrently herewith.

## I.       INTRODUCTION

Hand Held is a Delaware corporation and a wholly owned subsidiary of Honeywell International Inc. Honeywell traces its roots to 1904 and an engineer named Mark Honeywell from Wabash, Indiana who developed and installed the first hot-water-heating system in the United States. Honeywell has since grown into a conglomerate active across a variety of industries, including aerospace, building services, energy and sustainability, and industrial automation. Honeywell has also been a pioneer in the barcode scanning industry since the 1960s.

The cornerstone of Honeywell's cutting-edge products is, and always has been, its commitment to research and development. Honeywell develops products and solutions such as barcode scanners, computer equipment, wearable technology, software, and RFID devices. Recognizing Hand Held's proficiency and commitment to innovation in the field of barcode scanning and RFID, Honeywell acquired Hand Held in 2007. Since then, thousands of retailers, distributors, healthcare providers, and industrial organizations have used Hand Held's barcode scanning technology to improve efficiency, speed, and accuracy in their operations. Hand Held's extensive barcode scanning patent portfolio is a reflection of the breadth of Hand Held's extensive dedication and investment in the field of barcode scanning.

This Application arises out of the Foreign Infringement Proceedings between Hand Held, Scandit AG, and Scandit, Inc., a wholly owned subsidiary of Scandit AG, relating to barcode

scanning technology. Scandit AG is a technology company based in Zurich, Switzerland that develops, advertises, and distributes software for the automated recording of barcodes by smartphones and tablets. *See* Ex. 1 at 8 ("Munich Compl."). Scandit's software is capable of scanning barcodes and processing the collected information. *See* Ex. 1 at 8 (Munich Compl.). Scandit AG and Scandit, Inc. supply six of the ten leading Fortune 500 companies with barcode scanning software, and its software is used on more than 150 million devices performing 10 billion scans a year. *See* Ex. 1 at 8 (Munich Compl.).

At issue in the Foreign Infringement Proceedings are Hand Held's barcode scanning patents, including German utility model DE 20 2016 009 146 ("'146 Utility Model"), Ex. 2 ('146 Utility Model), European patent EP 2 819 062 B1 ("'062 Patent"), Ex. 3 ('062 Patent), and European patent EP 3 866 051 ("'051 Patent"), Ex. 4 ('051 Patent) (collectively, the "Asserted Patents"). The '146 Utility Model is entitled "Device For Scanning A Bar Code With An Intelligent Device In Continuous Operation" and has been granted and is currently valid in Germany. *See* Ex. 1 at 17-18 (Munich Compl.). In the German Action, Hand Held has asserted that Scandit AG and Scandit, Inc. infringe the '146 Utility Model. The '062 Patent is entitled "Mobile Device Having An Improved User Interface For Reading Code Symbols" and has been granted and is currently valid in the Federal Republic of Germany, France, and the Netherlands, among others. *See* Ex. 5 at 16 (UPC Düsseldorf Compl.). Hand Held has asserted that Scandit AG and Scandit, Inc. infringe the '062 Patent against Scandit AG and Scandit, Inc. in the Unified Patent Court Local Chamber of Düsseldorf ("UPC Düsseldorf Action"). The '051 Patent is entitled "Mobile Computer Configured To Read Multiple Decodable Indicia" and has been granted and is currently valid in all European Patent Convention member states. *See* Ex. 6 at 20 (UPC Munich Compl.). Hand Held has asserted that Scandit AG infringes the '051 Patent in the Unified Patent Court Local Chamber of Munich. ("UPC Munich Action"). As set forth in Hand Held's complaints, Scandit AG and Scandit, Inc. infringe the Asserted Patents because Scandit offers barcode scanning software that uses the technology claimed in the Asserted Patents. *See generally* Ex. 1 (Munich Compl.); Ex. 5 (UPC Düsseldorf Compl.); Ex. 6 (UPC Munich Compl.).

Scandit, Inc. possesses documents relevant to the issues in the Foreign Infringement Proceedings regarding how Scandit AG and Scandit, Inc.'s barcode scanning software infringes the '146 Utility Model, the '062 Patent, and the '051 Patent. Hand Held cannot obtain the documents it seeks in the Foreign Infringement Proceedings absent aid from this Court. *See* Wuttke Decl. ¶¶ 16-17, 29-32. Pursuant to 28 U.S.C. § 1782, Hand Held seeks leave from this Court to obtain documents from Scandit, Inc. for use in the Foreign Infringement Proceedings. *See* Ex. B (subpoena).

This Application satisfies each of the statutory requirements of 28 U.S.C. § 1782. *First*, Scandit, Inc. "resides or is found" in this District, 28 U.S.C. § 1782(a), because Scandit, Inc. maintains an office in Boston, Massachusetts. *Second*, Hand Held seeks discovery "for use in a proceeding in a foreign . . . tribunal," *id.*, including the District Court of Munich, Germany and the UPC in Düsseldorf and Munich, Germany. *Third*, Hand Held qualifies as an "interested person" in the foreign proceeding, *id.*, because Hand Held is a named party in each of the Foreign Infringement Actions. *Fourth*, this Application does not request discovery subject to any applicable privilege, *id.*

The Section 1782 discretionary factors enumerated by the Supreme Court in *Intel, Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) ("*Intel*") favor Hand Held's discovery request. *First*, the requested discovery is beyond the reach of the foreign jurisdictions and thus cannot be obtained in any of the Foreign Infringement Proceedings absent this Court's aid. *Second*, the Munich District Court I and UPC are receptive to the discovery sought here. *Third*, the discovery does not seek to avoid any restriction on gathering evidence in the Munich District Court I or UPC. *Finally*, the subpoenas are narrowly tailored and are not unduly intrusive or burdensome to Scandit, Inc.

Accordingly, Hand Held respectfully requests that the Court enter the order attached as Exhibit A and allow Hand Held to serve Scandit, Inc. with the subpoena attached as Exhibit B.

## II.    BACKGROUND

### A.    The Parties

Hand Held is a Delaware corporation and a wholly owned subsidiary of Honeywell International Inc., with its principal place of business at 855 S. Mint Street, Charlotte, North Carolina 28202. Scandit, Inc. is a Delaware corporation and a wholly owned subsidiary of Scandit AG with its principal place of business at 33 Arch Street, Boston, Massachusetts 02109. Ex. 7 (corporate document).

### B.    Hand Held's Barcode Scanning Patents

Barcodes are graphical representations of data, most commonly in the form of one dimensional (1D) and two-dimensional (2D) barcodes. Hand Held and Honeywell developed an array of products and technologies that allow barcode scanners to seamlessly read 1D and 2D barcodes. Because of Hand Held's and Honeywell's advancements, barcode scanners can now quickly decode any type of barcode, regardless of environment, and can automatically adjust for different users to provide quick and accurate scanning and decoding. The '146 Utility Model, '062 Patent, and '051 Patent are a reflection of the breadth of Honeywell's and Hand Held's extensive dedication and investment in barcode scanning technology.

Hand Held asserts that Scandit infringes the '146 Utility Model in the German Action. *See* Ex. 1 at 2 (Munich Compl.). The '146 Utility Model provides a method and application for scanning and decoding a barcode on a smart device without losing the context of an ongoing application. *See* Ex. 1 at 20 (Munich Compl.). Many smartphone operating systems have the ability to create application-specific software keyboards to add a barcode scan button and scan switch function, allowing the user to scan barcodes, which enters barcode data into a text box. *See* Ex. 1 at 20 (Munich Compl.). However, this creates uncertainty for users because once the scan is triggered, the application loses context—it looks as if the application has been closed, raising concerns about whether the collected data has been lost. *See* Ex. 1 at 20 (Munich Compl.). The '146 Utility Model's software simultaneously displays the viewfinder and application on a smart device to ensure that the context is not lost when a barcode is scanned. *See* Ex. 1 at 23 (Munich Compl.).

The '146 Utility Model software then decodes the barcode data and displays the decoded information on the smart device application. *See* Ex. 1 at 24-25 (Munich Compl.). Thus, the '146 Utility Model discloses a computer program for scanning a barcode, which makes it possible to scan barcodes while another application is simultaneously executed on a smart device. *See* Ex. 1 at 19 (Munich Compl.).

Hand Held asserts that Scandit infringes the '062 Patent in the UPC Düsseldorf Action. *See* Ex. 5 at 2 (UPC Düsseldorf Compl.). The '062 Patent discloses "a mobile device with an improved user interface for code symbol reading." Ex. 3 at 2:41-42 ('062 Patent). The '062 Patent addresses the problem that prior art mobile devices lacked a satisfactory way to direct the orientation of a barcode scanning operation and an intuitive trigger to activate the scanning operation. *See* Ex. 5 at 16 (UPC Düsseldorf Compl.). This is especially problematic when multiple barcodes are in the field of view, which can "lead to user confusion about which barcode was actually scanned." Ex. 3 at 2:33-41 ('062 Patent). The '062 Patent discloses a mobile device comprising a camera and user interface to produce a real-time video of the field of view of the camera for the user. *See* Ex. 5 at 19-20 (UPC Düsseldorf Compl.). The processor analyzes the real-time video to determine the location of a barcode symbol, and processes the image data output by the camera to provide the user feedback as to whether a code symbol can or cannot be decoded. *See* Ex. 5 at 20-25 (UPC Düsseldorf Compl.). The '062 Patent's software provides real-time communication as to which symbols are detected and which may be faulty—this prevents a user from mistaking having scanned a barcode despite an incorrect capture. *See* Ex. 5 at 25-26 (UPC Düsseldorf Compl.).

Hand Held asserts that Scandit infringes the '051 Patent in the UPC Munich Action. *See* Ex. 6 at 2 (UPC Munich Compl.). The '051 Patent discloses devices, methods, and software with an improved system for capturing barcodes. *See* Ex. 4 at 2:49-51 ('051 Patent). The '051 Patent teaches a computer program that allows a barcode scanning device with an image sensor to read barcodes and display an associated product image by pulling data from a database. *See* Ex. 4 at

23:16-41 ('051 Patent). Further, the barcode scanning device may output messages or additional relevant data in response to a user's input. *See* Ex. 4 at 3:23-27, 5:4-12 ('051 Patent).

### C. Hand Held Asserts Its Barcode Scanning Patents Against Scandit In The Foreign Infringement Proceedings

#### 1. Infringement Proceeding in the Munich District Court I

Hand Held filed a patent infringement action in the Munich District Court I (Landgericht München I), Patent Litigation Chamber (case no. 7 O 2189/24) on February 21, 2024 against Scandit AG and Scandit, Inc. Wuttke Decl. ¶ 9. Hand Held alleges that Scandit AG and Scandit, Inc. directly infringe the '146 Utility Model in Germany by, inter alia, making, using, selling, and offering for sale Scandit's barcode scanning software products, including at least: SparkScan, Barcode Scanner Software Development Kit ("SDK"), Barcode Scanner SDK for the Web, and Enterprise Browser. *See* Ex. 1 at 17 (Munich Compl.). The first hearing in the Munich District Court I is scheduled for January 23, 2025. Wuttke Decl. ¶ 11.

#### 2. Infringement Proceeding in the UPC Düsseldorf Local Chamber

Hand Held filed a patent infringement action in the UPC Düsseldorf Local Chamber (case no. ACT_9309/2024) on February 21, 2024 against Scandit AG and Scandit, Inc. Wuttke Decl. ¶ 9. Hand Held alleges that Scandit AG and Scandit, Inc. infringe the '062 Patent, both directly and indirectly, in all UPC member states by, inter alia, making, using, selling, and offering for sale at least Scandit's MatrixScan Count barcode scanning software. Ex. 5 at 13 (UPC Düsseldorf Compl.). The first hearing in the UPC Düsseldorf Action is scheduled for March 2025. Wuttke Decl. ¶ 11.

#### 3. Infringement Proceeding in the UPC Munich Local Chamber

Hand Held filed a patent infringement action in the UPC Munich Local Chamber (case no. 9206/2024) on February 21, 2024 against Scandit AG ("UPC Munich Infringement Action"). Wuttke Decl. ¶ 9. Hand Held alleges that Scandit AG infringes the '051 Patent, both directly and indirectly, in all UPC member states by, inter alia, making, using, selling, and offering for sale at

least Scandit's Data Capture SDK. Ex. 6 at 12 (UPC Munich Compl.). The first hearing in the UPC Munich Infringement Action is scheduled for April 29, 2025. Wuttke Decl. ¶ 11.

### D.    Hand Held's Requested Discovery

Hand Held seeks targeted information from Scandit, Inc. that is highly relevant to the Foreign Infringement Proceedings. *See* Wuttke Decl. ¶¶ 12, 15, 17, 19-28. However, the Munich District Court I and UPC tribunals do not provide discovery procedures comparable to those available in the United States district courts. Accordingly, absent relief under 28 U.S.C. § 1782, Hand Held cannot compel production of highly relevant documents from Scandit, Inc. in the Foreign Infringement Proceedings. *See* Wuttke Decl. ¶¶ 14, 16-17, 29-32. Therefore, Hand Held seeks narrow discovery in this Court to enable the Munich District Court I and UPC to adjudicate the infringement actions before them based upon a complete factual record. Hand Held describes the discovery requested herein as:

- **Request for Production No. 1**: information regarding the extent to which third-party applications can be combined with Scandit's software;

- **Request for Production No. 2**: information regarding the extent to which Scandit's software "effects" or "causes" the scanned display on the third party application;

- **Requests for Production No. 5**: information on how the Scandit MatrixScan Count software detects barcodes through real-time videos whereby the frames of the video feed are analyzed

- **Requests for Production No. 6**: information about Scandit's error detection feature used to decode the barcodes;

- **Requests for Production Nos. 4, 8, 10**: Scandit's source code for its barcode scanning software; and

- **Requests for Production Nos. 3, 7, 9**: Scandit's instructions given to its software developers.

*See* Ex. B (subpoena).

Neither Scandit AG nor Scandit, Inc. have produced this information in the Foreign Infringement Proceedings. Wuttke Decl. ¶¶ 12, 18. However, this information is highly relevant to the issues underlying the Foreign Infringement Proceedings; namely, how Scandit's barcode scanning software products infringe the Asserted Patents in Europe. Wuttke Decl. ¶¶ 12, 15, 17, 19-28. Specifically, Requests for Production Nos. 1-4 are relevant to the issues of patent infringement in the Munich District Court I, including Scandit's infringing acts and how the Scandit barcode scanning software practices the claims of the '142 Utility Model. *See* Wuttke Decl. ¶¶ 19-22; *see also, e.g.*, Ex. 1 at 24-25 (Munich Compl.) (claim 1 stating in part "wherein said device is further configured to display said image on said display and visual mark said one or more successfully decoded decodable indicia . . . said device is further configured to display a product image at a location of an associated image representation of each one or more successfully decoded decodable indicia . . . .").

Requests for Production Nos. 5-8 are relevant to the issues of patent infringement in the UPC Düsseldorf Action, including how Scandit's MatrixScan Count software infringes claim 1 of the '062 Patent. *See* Wuttke Decl. ¶¶ 23-25; *see also, e.g.*, Ex. 5 at 17-18 (UPC Düsseldorf Compl.) (claim 1 stating in part "displaying the real-time video feed (21) on the visual display (15); dynamically analyzing at least a frame of the real-time video feed (21) . . . including verifying that a complete decoding of the image of the code symbol (22) is obtained by error detection means . . . .").

Requests for Production Nos. 9-10 are relevant to the issues of patent infringement in the UPC Munich Action, including how Scandit's Data Capture SDK practices the claims of the '051 Patent. *See* Wuttke Decl. ¶¶ 26-28; *see also, e.g.*, Ex. 6 at 23-24 (UPC Munich Compl.) (claim 1 reciting in part "wherein said device is configured . . . to locate within said image and decode one or more decodable indicia; . . . to display a produce image at a location of an associated image representation of each one or more successfully decoded decidable indicia . . . to output at least one decoded message corresponding to at least one selected decoded indicia and/or at least one product image . . . ."); *id.* at 24-25 (claim 10 reciting in part "responsive to acquiring an image of

one or more objects within a field of view (140) of said imaging subsystem, locating within said image and decoding one or more decodable indicia; . . . associating each of one or more successfully decoded indicia with a product image based on a lookup table retrieved from a database . . . .").

## III.   ANALYSIS

### A.   Hand Held's Application Satisfies § 1782's Threshold Requirements

Section 1782 authorizes federal district courts to order discovery for use in "a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782. The district court may grant discovery under Section 1782 if: "1) the person from whom discovery is sought 'resides or is found' in the district where the court sits; 2) the request seeks evidence (the 'testimony or statement' of a person or the production of a 'document or other thing') 'for use in a proceeding in a foreign or international tribunal'; 3) the request is made by a foreign or international tribunal or by 'any interested person'; and 4) the material sought is not protected by 'any legally applicable privilege.'" *In re Schlich*, 893 F.3d 40, 46 (1st Cir. 2018) (quoting 28 U.S.C. § 1782).

This Application satisfies each of the statutory requirements of Section 1782.

#### 1.   Scandit, Inc. is found within this District

Scandit, Inc. is "found" within this District because Scandit, Inc. maintains its principal place of business at 33 Arch Street, Boston, Massachusetts 02110. Ex. 7 (corporate document); *see also In re Gen. Elec. Co.*, No. 1:22-CV-91125-IT, 2022 WL 16720425, at *3 (D. Mass. Nov. 4, 2022) ("[W]here [respondent] maintains an office in Boston, it is 'found' in this district within the meaning of § 1782(a).").

#### 2.   The discovery requested is "for use" before the Munich District Court I and UPC

The requested discovery is "for use" in Hand Held's pending patent infringement actions before "foreign and international tribunals," including the Munich District Court I and the UPC Local Divisions in Munich, Germany and Düsseldorf, Germany. *See* Wuttke Decl. ¶¶ 12-13. The Supreme Court has clarified that a "'foreign tribunal' is one that exercises governmental authority

conferred by a single nation, and an 'international tribunal' is one that exercises governmental authority conferred by two or more nations." *ZF Auto. US, Inc. v. Luxshare, Ltd.*, 596 U.S. 619, 633 (2022). The Munich District Court I and UPC both qualify as a "foreign or international tribunal" for the purposes of Section 1782. *See* Wuttke Decl. ¶ 13.

This District and other courts have held that German courts qualify as a "foreign . . . tribunal" within the meaning of Section 1782, as Germany has conferred adjudicatory authority to the Munich District Court I. *See, e.g.*, *Gen. Elec.*, 2022 WL 16720425, at *3 ("The proceeding in the German court qualifies as a 'foreign . . . tribunal' within the meaning of § 1782(a)."); *In re Betapharm Arzneimittel GmbH*, No. 1:23-MC-91600-IT, 2024 WL 421996, at *2-3 (D. Mass. Feb. 5, 2024) (finding that Section 1782 discovery sought for a Düsseldorf District Court action constituted "for use in a proceeding or international tribunal"); *Palantir Techs., Inc. v. Abramowitz*, 415 F. Supp. 3d 907, 909 (N.D. Cal. 2019) (granting Section 1782 discovery for use in a patent dispute in the Munich Regional Court); *In re Thales Dis Ais Deutschland GmbH*, No. 3:21-MC-303-S, 2021 WL 7707268, at *2 (N.D. Tex. Nov. 5, 2021) (same); *Illumina Cambridge Ltd. v. Complete Genomics, Inc.*, No. 19-MC-80215-WHO(TSH), 2020 WL 820327, at *3 (N.D. Cal. Feb. 19, 2020) (same).

At least two courts have determined that the UPC also constitutes an "international tribunal" for the purposes of Section 1782. *See, e.g.*, *In re Ex Parte Application of Volkswagen AG*, No. 24-MC-0832 (JS), 2024 WL 1556912, at *2 (E.D.N.Y. Apr. 10, 2024) ("The instant application meets the statutory requirements of § 1782. . . . [T]he discovery sought is for use in a foreign proceeding before the UPC."); *In re Netgear Inc.*, No. 23MC794-BLM, 2024 WL 390059, at *5 (S.D. Cal. Jan. 31, 2024) (same). That conclusion is correct because the UPC "exercises governmental authority conferred by two or more nations"—here, the authority to adjudicate patent disputes conferred by the European Union. *ZF Auto.*, 596 U.S. at 633. The UPC falls under the Supreme Court's definition of "international tribunal" because twenty-five European Union member states have "imbued the [UPC] with official power to adjudicate disputes" relating to Unitary Patents and European patents validated in Contract Member States, including the authority to adjudicate

issues of infringement, validity, enforceability, and remedies "subject to the same obligations under Union law as any national court of the Contracting Member States." Wuttke Decl. ¶ 13; *ZF Auto.*, 596 U.S. at 628, 630, 633.

Further, the "for use" prong requires only that the evidence sought be relevant to the foreign proceeding. *See Schlich*, 893 F.3d at 52 ("[A] request for discovery under § 1782 that is plainly irrelevant to the foreign proceeding will fail to meet the statutory 'for use' requirement . . . ."); *see also Weber v. Finker*, 554 F.3d 1379, 1384-85 (11th Cir. 2009) (holding that Section 1782 discovery requests need only comply with the Fed. R. Civ. P. 26 relevance standard). Here, as explained above and more below, the requested discovery is "for use" in the foreign proceedings because it is plainly relevant to the issues underlying the Foreign Infringement Proceedings under Fed. R. Civ. P. 26—specifically, for use by Hand Held in proving Scandit's infringement of the Asserted Patents. *See* Wuttke Decl. ¶¶ 12, 15, 17, 19-28; *see also Gen. Elec.*, 2022 WL 16720425, at *3 ("The discovery sought appears to be sufficiently relevant to that proceeding where [applicant] has provided undisputed declarations that the German Action pertains to patent infringement litigation."); *Minis v. Thomson*, No. MISC. 14-1050-DJC, 2014 WL 1599947, at *2 (D. Mass. Apr. 18, 2014) (determining that each discovery request was relevant to the underlying issues in the foreign proceeding and finding that the Section 1782 statutory requirements did not require the petitioners to show that the requested discovery would be discoverable or admissible in the foreign proceeding).

Thus, Hand Held's requested discovery before the UPC and Munich District Court I constitutes "for use in a foreign or international tribunal." 28 U.S.C. § 1782(a).

### 3.    Hand Held is an "interested person" under Section 1782

Hand Held is an "interested person" under Section 1782 because Hand Held is the plaintiff in the Foreign Infringement Proceedings. *Intel*, 542 U.S. at 256 ("[L]itigants are included among, and may be the most common example of[] the 'interested person[s]' who may invoke § 1782"); *see also Gen. Elec.*, 2022 WL 16720425, at *3; *Chevron Corp. v. Sheffitz*, 754 F. Supp. 2d 254, 260 & n.44 (D. Mass. 2010).

### 4.    Hand Held is not seeking privileged material

The discovery requested by Hand Held is not subject to any applicable privilege. Hand Held seeks to discover facts about the development and functionality of Scandit's barcode scanning software, which are relevant to how the Accused Products infringe the Asserted Patents. Wuttke Decl. ¶¶ 15, 19-28. In the event that Scandit, Inc. claims any privilege applies to potentially responsive discovery, this Court should not alter its analysis of the Section 1782 statutory requirements, as the Federal Rules of Civil Procedure provide adequate protection to Scandit, Inc. *See, e.g.*, *In re Fagan*, No. CV 19-MC-91210-ADB, 2019 WL 2267063, at *3 n.2 (D. Mass. May 28, 2019) ("Even if the Court was to grant the [Section 1782] application, the subpoenaed entities would still be afforded an opportunity to object and move for a protective order to the extent privileged information was implicated."); *In re Akkermansia Co.*, No. 22-MC-91577-DJC, 2023 WL 4015992, at *5 n.7 (D. Mass. May 5, 2023) (directing respondents to provide a privilege log for any Section 1782 discovery withheld as privileged).

\*        \*        \*

For these reasons, Hand Held satisfies the statutory requirements for this Section 1782 application—Scandit is "found" in this District, the requested discovery is "for use" in the Foreign Infringement Proceedings, Hand Held is an "interested party" to the Foreign Infringement Proceedings, and Hand Held does not seek any privileged discovery from Scandit, Inc.

### B.    All *Intel* Discretionary Factors Weigh In Favor Of Granting Hand Held's Requested Discovery

"Once the statutory requirements are satisfied, district courts have discretion to grant Section 1782 discovery." *In re Porsche Automobil Holding SE*, 985 F.3d 115, 120 (1st Cir. 2021) [hereinafter *Porsche II*]. "In *Intel*, the Supreme Court set out a list of factors—rather than elements of a claim—'that bear consideration' by the district court when it exercises its discretion under the statute, leaving it up to the district court to assign those factors weight based on the particular circumstances of each case." *Schlich*, 893 F.3d at 50 (quoting *Intel*, 542 U.S. at 264). The *Intel* factors are as follows: (1) whether the discovery is sought from a participant in a foreign

proceeding; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to assistance from U.S. federal courts; (3) whether a section 1782 request conceals an attempt to circumvent foreign proof-gathering limits or other policies of a foreign country or the United States; and (4) whether the subpoena contains unduly intrusive or burdensome requests. *Porsche II*, 985 F.3d at 120 (quoting *Intel*, 542 U.S. at 264-65) (cleaned up). The First Circuit does not place a "burden on either party" to prove any of the *Intel* factors—both parties should "make their arguments as to all of the factors" and the district court then "determine[s] whom those factors favor." *Schlich*, 893 F.3d at 50.

The Section 1782 discretionary factors enumerated in *Intel* favor Hand Held's discovery request. In fact, granting Hand Held's Section 1782 Application falls within the "twin aims of the statute: 'providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts.'" *Schlich*, 893 F.3d at 46-7 (quoting *Intel*, 542 U.S. at 252).

> 1. **The requested discovery is beyond the jurisdictional reach of the Munich District Court I and the UPC such that the discovery from Scandit, Inc. cannot be obtained absent Section 1782 relief**

The first *Intel* factor focuses on the jurisdictional reach of a foreign tribunal to produce the evidence requested. *See Intel*, 542 U.S. at 264. As an initial matter, Scandit, Inc. is a party to the German Action and UPC Düsseldorf Action, but is not a party to the UPC Munich Action. So, there is no question that Scandit, Inc. is beyond the jurisdiction of the UPC Munich Local District; thus, the first *Intel* factor favors granting the Application. *See* Wuttke Decl. ¶ 9; *Gen. Elec.*, 2022 WL 16720425, at *5 ("If the documents or witnesses are not within the German court's jurisdictional reach, however, the [first *Intel*] factor weighs in favor of the application."); *In re Application of Johannes Roessner*, No. 21-MC-513 (RA) (OTW), 2021 WL 5042861, at *2 (S.D.N.Y. Oct. 29, 2021) (finding the first *Intel* factor favored Section 1782 discovery because respondent was not a named party in the German action even "[t]hough Respondent is a subsidiary of the German Plaintiff, parent companies who are participants to foreign proceedings are

considered separate legal entities from their subsidiaries and affiliates for the purpose of Section 1782 motions").

Regardless, while Section 1782 aid may not generally be "as apparent" when sought from a party in a foreign proceeding, *Intel*, 542 U.S. at 264, "there is no rule that Section 1782 applications can only be granted where the party from whom discovery is sought is not a party to the foreign proceeding," *Thales*, 2021 WL 7707268, at *2 (cleaned up) (quoting *Palantir*, 415 F. Supp. 3d at 912). Courts recognize that the first *Intel* factor weighs in favor of granting Section 1782 discovery of *parties* to foreign proceedings when the foreign tribunal does not allow the discovery sought—"the critical question is whether the information targeted is within the foreign tribunals jurisdictional reach." *In re Porsche Auto. Holding SE*, No. CV 19-MC-91129-LTS, 2019 WL 5806913, at *6 (D. Mass. Nov. 6, 2019), *adopted sub nom.* No. CV 19-MC-91129-LTS, 2020 WL 813710 (D. Mass. Feb. 19, 2020), *aff'd*, No. 20-1239, 2021 WL 140638 (1st Cir. Jan. 15, 2021) [hereinafter *Porsche I*].

Here, the discovery sought it outside the German court and UPC's jurisdictional reach. *See* Wuttke Decl. ¶¶ 14, 16, 29-32. As to the German Action, courts routinely find the first *Intel* factor favors granting Section 1782 applications for that reason. In *Palantir*, the court found that the first *Intel* factor favored granting the Section 1782 application against a party to a German proceeding because petitioner there, like here, "provided a declaration from a German attorney attesting that under German law, the German court cannot order the discovery sought here." *Palantir*, 415 F. Supp. 3d at 913. Likewise, in *Thales*, the court found that the first *Intel* factor favored granting the Section 1782 petition against a party in a German proceeding because petitioner demonstrated that the requested discovery "likely cannot be obtained in the German Litigation" because "production of documents in German civil lawsuits is limited to documents that can be specifically identified." *Thales*, 2021 WL 7707268, at *2. Similarly, in *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 593 (7th Cir. 2011), the petitioner sued respondent in a German court for trade secret misappropriation and sought discovery in a federal district court pursuant to Section 1782. When the respondent raised the potential for abuse when granting a Section 1782 application with respect

to a party in a German proceeding, Judge Posner had this to say about the potential for abuse—"We don't see it." *Heraeus Kulzer*, 633 F.3d at 596 (noting that the German legal system does not authorize discovery to the same degree as Fed. R. Civ. P. 26).

As in *Heareus*, *Palantir*, and *Thales*, Hand Held has provided evidence that the requested discovery helpful to prove its infringement claims cannot be obtained in the German Action. *See* Wuttke Decl. ¶¶ 14, 16, 29-32; *Thales*, 2021 WL 7707268, at *2. Upon information and belief, the requested discovery is not located in Germany, and the Munich District Court I cannot compel Scandit AG or Scandit, Inc. to produce documents that are located outside of Germany. *See* Wuttke Decl. ¶¶ 14, 16, 29-32. Further, the Munich District Court I does not provide discovery for documents with which Hand Held cannot specifically identify. *See* Wuttke Decl. ¶ 30. The Munich District Court I also lacks any enforcement mechanism to compel Scandit, Inc. to produce any discovery of which it has been ordered. *See* Wuttke Decl. ¶¶ 14, 16, 29-30, 32. While Hand Held is confident that Scandit, Inc. possesses responsive documents, Hand Held cannot identify these responsive documents with the particularity required under German law, and cannot compel production of such responsive materials in the Munich District Court I. *See id.*

While the UPC is a newer court without as much case law, the same analysis applies. *See Volkswagen*, 2024 WL 1556912, at *2 ("[Respondent] is not a party to the foreign proceeding, and accordingly, the *UPC may not compel him to testify or produce the documents sought*.") (emphasis added); *Illumina Cambridge*, 2020 WL 820327, at *4 ("[E]ven if Respondents were participants, the discovery [petitioner] seeks might not be available in any event" which "weighs in favor of § 1782 discovery"). The UPC requires an applicant to specify the evidence that is in the possession of the opposing party, and state the reasons why the applicant suspects that the opposing party possesses the evidence as well as the extent to which the evidence is suitable and necessary to substantiate the infringement allegations. *See* Wuttke Decl. ¶ 31. The UPC also lacks the authority to investigate, or to order the investigation of, facts or documents not already specified by the parties to the action. *See* Wuttke Decl. ¶¶ 29, 31-32. Therefore, a UPC applicant cannot obtain relevant evidence without first obtaining a full overview of the evidence—requirements that are

much stricter and narrower than for discovery under Fed. R. Civ. P. 26. *See Heraeus Kulzer*, 633 F.3d at 596 (emphasizing the "importance of American-style discovery to [the petitioner]'s ability to prove" its foreign claims).

As such, the first *Intel* factor favors granting the Application even if the requested discovery turns out to be located outside the United States because the requested discovery is beyond the jurisdictional reach of the Munich District Court I and UPC. *See Gen. Elec.*, 2022 WL 16720425, at *3, *5 (following the Second Circuit and Eleventh Circuit in holding that there is "no absolute bar to the § 1782 application based on the location of the documents" and finding that the first *Intel* factor favored granting Section 1782 discovery because "regardless of whether the documents are in the United States, Spain, or Denmark, they are outside of the German court's jurisdictional reach").

### 2.    The Munich District Court I and UPC are receptive to discovery obtained through U.S. judicial assistance

The district court evaluating a Section 1782 application "may take into account the nature of the foreign tribunal, the character of the proceeding[] underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. Courts "have been instructed to tread lightly and heed only clear statements by foreign tribunals that they would not welcome § 1782 assistance." *Gen. Elec.*, 2022 WL 16720425, at *6 (quoting *Porsche I*, 2019 WL 5806913, at *7). Restricted discovery procedures in the foreign tribunal do not indicate a lack of receptivity. *See Gen. Elec.*, 2022 WL 16720425, at *6 ("A foreign nation may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions; such reasons do not necessarily signal objection to aid from United States federal courts." (quoting *Intel*, 542 U.S. at 244)).

The second *Intel* factor heavily favors granting Hand Held's Section 1782 application because the Munich District Court I and the UPC are receptive to the requested discovery. The Declaration of Tobias Wuttke, a German patent litigator with over 18 years of experience, confirms that the Munich District Court I is receptive to the requested discovery obtained through this

Application. Wuttke Decl. ¶¶ 33-35, 37-38. Under German law, any documents obtained under Section 1782 can be introduced in the German court by offer of proof, and the German court would accept such offer without prejudice or admissibility consideration. Wuttke Decl. ¶¶ 33-35, 37-38. The Munich District Court I must consider any documents submitted into the proceedings, including Section 1782 discovery. Wuttke Decl. ¶¶ 34-35. Further, the German Federal Supreme Court has confirmed the admissibility of evidence in German proceedings obtained pursuant to a U.S. judgment. Wuttke Decl. ¶ 34. Indeed, many courts have confirmed Mr. Wuttke's statements regarding the receptivity of German courts to Section 1782 discovery. *See, e.g.*, *Gen. Elec.*, 2022 WL 16720425, at *6 (finding the German court receptive to Section 1782 discovery and relying on a German patent litigator's declaration that German courts regularly introduce Section 1782 evidence); *Porsche II*, 985 F.3d at 121 (affirming the grant of Section 1782 discovery in part because the German court "signaled that it is receptive" to Section 1782 discovery); *CPC Pat. Techs. PTY Ltd. v. Apple, Inc.*, No. 21-MC-80091-JST, 2023 WL 3579314, at *4 (N.D. Cal. Jan. 3, 2023) (same); *Illumina Cambridge*, 2020 WL 820327, at *4-5 (same); *Palantir*, 415 F. Supp. 3d 915 (same).

As under German law, UPC law permits any documents obtained pursuant to Section 1782 can be introduced in a UPC proceeding by offer of proof, and the UPC would accept such offer. Wuttke Decl. ¶¶ 33, 36-37. While no UPC decision has addressed Section 1782 discovery specifically, the UPC will likely pursue a similar approach as the German courts, because the UPC is functionally equivalent to a national court in a European Union member state. Wuttke Decl. ¶ 36; UPCA Ch. I Art. I, Art. IV. Further, there is no law, rule of evidence, or rule of procedure in the UPC that prohibits a party from seeking discovery pursuant to Section 1782, or from using such evidence in UPC proceedings. Wuttke Decl. ¶¶ 36-38. At least one court has indicated the receptivity of the UPC to Section 1782 discovery absent clear statements from the UPC to the contrary. *Volkswagen*, 2024 WL 1556912, at *2 ("[T]he Court has no reason to believe the UPC will not be receptive to receiving evidence obtained via a United States proceeding.").

### 3. This Application does not attempt to circumvent foreign proof-gathering restrictions

The third *Intel* factor looks to "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. The inquiry "boils down to whether the discovery is being sought in bad faith." *Porsche I*, 2019 WL 5806913, at *8. Courts find the third *Intel* factor favors granting Section 1782 discovery absent a "clear" statement from the foreign tribunal that the requested discovery would "thwart" a rule or policy. *Id.* at *8 (citing *In re Ex Parte Application of Pro-Sys Consultants*, No. CV 16-MC-91016-PBS, 2016 WL 4154306, at *2 (D. Mass. Aug. 5, 2016)). There is no bad faith here. No "clear" statement (let alone any statement) exists from the foreign tribunal that the requested discovery would "thwart" a rule or policy. Wuttke Decl. ¶¶ 17, 33-38; *see Porsche I*, 2019 WL 5806913, at *8. And there is no requirement that Hand Held must exhaust its remedies in the foreign tribunal before pursuing Section 1782 discovery. *See Intel*, 542 U.S. at 244 ("Section 1782 is a provision for assistance to tribunals abroad. It does not direct United States courts to engage in comparative analysis to determine whether analogous proceedings exist here."); *In re Application for an Order Permitting Metallgesellschaft AG to take Discovery*, 121 F.3d 77, 79 (2d Cir. 1997) ("[A] 'quasi-exhaustion requirement,' finds no support in the plain language of the statute and runs counter to its express purposes . . . .") (citation omitted).

### 4. The requested discovery is commensurate with its relevance to the Foreign Infringement Proceedings and will not unduly burden Scandit, Inc.

Section 1782 requires discovery orders to be "in accordance with the Federal Rules of Civil Procedure" unless the court orders otherwise. *Sandra Holding Ltd. v. Al Saleh*, No. 18-MC-91406-PBS, 2019 WL 3072197, at *4 (D. Mass. July 15, 2019) (quoting 28 U.S.C. § 1782(a)). Thus, the fourth *Intel* factor "addresses whether the request is 'unduly intrusive or burdensome' to the extent that it should either be 'trimmed' or rejected outright." *Schlich*, 893 F.3d at 47 (quoting *Intel*, 542 U.S. at 265). "In the § 1782 context, requests are unduly intrusive and burdensome where they are

not narrowly tailored, request confidential information and appear to be a broad fishing expedition for irrelevant information." *Gen. Elec.*, 2022 WL 16720425, at *7 (quotations omitted).

Hand Held seeks leave to serve narrowly tailored document subpoenas on Scandit, Inc. relating to the design, development, and functionality of Scandit's accused barcode scanning software. As discussed above, the discovery requested is tailored to relevant issues in the Foreign Infringement Actions, specifically to Scandit's infringement of the Asserted Patents. *See* Wuttke Decl. ¶¶ 12, 15, 17, 19-28; *supra* Section II.D. The requested discovery cuts directly to the core of this alleged infringement—how the Accused Products practice the claims of the Asserted Patents and the extent to which Scandit AG and Scandit, Inc. committed infringing acts. *See Thales*, 2021 WL 7707268, at *3 (finding the Section 1782 discovery was "sufficiently narrowly tailored and not unduly intrusive or burdensome" because "[t]he nine categories of documents Petitioner seeks are all directly related to the claims asserted in the German litigation.").

Further, any claim by Scandit, Inc. that production of source code is unduly burdensome should be dispelled, as courts routinely order the production of source code relevant to a patentee's infringement claims over the objections of accused infringers that source code is highly confidential and would require significant time and resources to collect. *See, e.g.*, *Apple Inc. v. Samsung Elecs. Co.*, No. C 11–1846 LHK (PSG), 2012 WL 1595784, at *1 (N.D. Cal. May 4, 2012) ("[S]ubject to the proportionality and burden considerations imposed by Fed. R. Civ. P. 26, when a patentee requests source code for one or more accused products, a defendant must produce it."); *In re Samsung Elecs. Co, Ltd.*, No. 22-MC-80005-VKD, 2022 WL 425579, at *2 (N.D. Cal. Feb. 11, 2022) (compelling source code production over accused infringer's objections that its source code is "highly confidential" and that accused infringer "would have to expend resources . . . to identify . . . and to prepare and deploy a source code computer").

## IV.   CONCLUSION

For the reasons discussed herein, the Court should grant Hand Held's Section 1782 Application to serve a subpoena on Scandit, Inc. for use in the Foreign Infringement Proceedings. Hand Held has satisfied each of the statutory requirements of Section 1782 so it is within this

Court's discretion to grant Hand Held discovery pursuant to Section 1782. The Court should exercise that discretion because each *Intel* factor favors granting this Application.

OF COUNSEL:

Douglas L. Sawyer (*pro hac forthcoming*)
dougsawyer@paulhastings.com
Mark T. Smith (*pro hac forthcoming*)
marksmith@paulhastings.com
PAUL HASTINGS LLP
71 South Wacker Drive
45th Floor
Chicago, Illinois 60606
Telephone:      1(312) 499-6000
Facsimile:      1(312) 499-6100

/s/ *Matthias Kamber*

Matthias Kamber (BBO #654217)
matthiaskamber@paulhastings.com
PAUL HASTINGS LLP
101 California Street
48th Floor
San Francisco, CA 94111
Telephone:      1(415) 856-7050
Facsimile:      1(415) 856-7150

Dated: July 15, 2024